IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROLLS-ROYCE CORPORATION, §
§
　　　　Plaintiff- §
　　　　counterdefendant, §
§ Civil Action No. 3:07-CV-0739-D
VS. §
§
HEROS, INC., et al., §
§
　　　　Defendants- §
　　　　counterplaintiffs. §

MEMORANDUM OPINION
AND ORDER

　　　　Defendants move to dismiss some of plaintiff Rolls-Royce
Corporation's ("Rolls-Royce's") claims under Fed. R. Civ. P.
12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6)
for failure to adequately plead alter ego claims.  Rolls-Royce
moves pursuant to Rule 12(f) to strike certain paragraphs of
defendants' responsive pleading, contending they contain factual
allegations that are time-barred.  Rolls-Royce also moves for leave
to amend its complaint to join two additional parties——Jerry S.
Hiatt ("Hiatt") and Action Aircraft ("Action")——as additional
defendants under Rule 20(a).  The court concludes that it has
personal jurisdiction over all defendants as to all but one claim.
The court therefore grants in part and denies in part defendants'
Rule 12(b)(2) motion to dismiss.  Because Rolls-Royce has failed to
adequately plead alter ego claims, the court grants defendants'
Rule 12(b)(6) motion to dismiss, but it allows Rolls-Royce to
replead this claim when it files its first amended complaint.  The

court denies Rolls-Royce's motion to strike portions of defendants' responsive pleading, and it grants Rolls-Royce's motion for leave to amend.

I

A

In 1995 Rolls-Royce acquired Allison Engine Company, the original manufacturer of the Model 250 engine ("Model 250"), an industry leading engine for light aircraft, helicopters, and unmanned air vehicles.[1] Rolls-Royce continues to manufacture several versions of the Model 250 for both civilian and military use. In addition to selling the Model 250, Rolls-Royce sells individual component parts. The Federal Aviation Administration ("FAA") classifies Rolls-Royce as the original equipment manufacturer ("OEM") of the Model 250.

Through parts manufacturer approval ("PMA"), the FAA gives companies other than OEMs the right to sell imitation parts to compete with OEMs. Defendant Hye-Tech Manufacturing, LLC ("Hye-Tech") has PMA to produce 131 different Model 250 parts. Hye-Tech therefore competes with Rolls-Royce in the secondary market for Model 250 replacements parts.[2]

The FAA also grants companies the right to repair original

---

[1]Insofar as pertinent to the motions before the court, the facts are undisputed.

[2]Hye-Tech is a California limited liability company with its principal place of business in California.

engine parts to a serviceable condition.  To obtain the right to perform such repair services, the FAA must approve the company's step-by-step technical process for the repair.  Defendant H.E.R.O.S., Inc. ("Heros") has FAA approval to perform at least 34 repair schemes for the Model 250.  Heros is therefore also a competitor of Rolls-Royce in the secondary market for Model 250 replacement parts.[3]

Defendant Heros Kajberouni ("Kajberouni") is the President and a substantial shareholder of Heros, and he is a member and the Chief Executive Officer of Hye-Tech.[4]

B

Rolls-Royce sues Heros, Hye-Tech, and Kajberouni, asserting ten grounds for relief, and alleging that each is the alter ego of the other.  Rolls-Royce alleges that defendants engaged in reverse palming off, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by selling genuine Rolls-Royce Model 250 parts while representing to the public that the parts were their own.

Rolls-Royce also sues defendants for misappropriation of trade secrets.  It alleges that defendants acquired Rolls-Royce's proprietary design data for the Model 250, knowing that these trade

_____

[3]Heros is a California corporation with its principal place of business in California.

[4]Kajberouni appears to be a citizen of California, although Rolls-Royce does not explicitly plead his citizenship in the complaint.

secrets were obtained unlawfully. Rolls-Royce also avers that defendants used this design data to obtain various FAA approvals. Because Rolls-Royce's corporate headquarters is in the state of Indiana, where Rolls-Royce asserts that its injury occurred, Rolls-Royce brings this claim under Indiana law, Ind. Code § 24-2-3-1 *et seq.* (2006).

Rolls-Royce also alleges that it is entitled to replevin under Indiana law, Ind. Code. § 32-35-2-1 (2002), because defendants have wrongfully taken and unlawfully detained its proprietary design data for the Model 250. Similarly, Rolls-Royce brings a claim for conversion or theft under Indiana law, Ind. Code § 35-43-4-2 (2004).

Rolls-Royce next asserts claims for two distinct violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1962(d), for conspiring to participate in a pattern of racketeering activity and for actual participation. Essentially, Rolls-Royce alleges that defendants and a few other companies and individuals wrongfully obtained Rolls-Royce's Model 250 design data, in violation of various confidentiality agreements, and exploited the data for their own benefit by using it to obtain PMA from the FAA and the right to service Model 250 parts, and by transferring it to others in interstate commerce. The predicate act for both alleged violations of § 1962 is transferring stolen goods in interstate commerce, in violation of

18 U.S.C. § 2314. *See* 18 U.S.C. § 1961(1) (listing § 18 U.S.C. § 2314 as "racketeering activity"). Rolls-Royce avers that defendants' enterprise unlawfully expanded the PMA market and diluted the value of Rolls-Royce's design data. Rolls-Royce brings a similar claim under Indiana law, Ind. Code § 34-24-3-1 (1999).

The complaint also avers that defendants' misappropriation of Rolls-Royce's design data constitutes the tort of interference with a business relationship, because defendants' conduct has hampered Rolls-Royce's relationship with companies that purchase its Model 250 parts.

Rolls-Royce also asserts a claim for quantum meruit for the profits that defendants have derived from misappropriating Rolls-Royce's design data.

Finally, Rolls-Royce seeks a judgment declaring that defendants' FAA approvals are void because they have been acquired using design data misappropriated from Rolls-Royce. Based on these claims, Rolls-Royce seeks money damages, return of its proprietary design data, and an injunction prohibiting defendants from further use of the data.

C

In addition to moving to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, and to dismiss under Rule 12(b)(6) Rolls-Royce's alter ego claims, defendants assert eight counterclaims. Their first two counterclaims allege that Rolls-Royce violated the

same two provisions of RICO on which Rolls-Royce relies, 18 U.S.C. § 1962(c) and (d). Defendants base these claims, however, on the predicate act of mail fraud, 18 U.S.C. § 1341. They maintain that Rolls-Royce has secured its dominant position in the market for Model 250 replacement parts through its racketeering conduct. Defendants also aver that Rolls-Royce formed an enterprise through direct control over Rolls-Royce-owned service centers and by contractual control over a network of distributors. According to defendants, through this enterprise, Rolls-Royce has falsely asserted proprietary rights to public domain data in a scheme to dominate the Model 250 aftermarket. Defendants allege that Rolls-Royce has distributed in interstate commerce numerous documents related to the Model 250 with legends and captions that falsely state that the documents contain Rolls-Royce proprietary data.

Defendants also assert various antitrust claims. They allege that Rolls-Royce has violated § 1 of the Sherman Act through unlawful tying arrangements with its network of distributors, so that owners of aircraft utilizing Model 250 engines are induced to purchase Rolls-Royce replacement parts. Defendants also bring a claim under § 2 of the Sherman Act, alleging that Rolls-Royce has abused its monopoly power in an attempt to drive defendants out of the Model 250 replacement part market. Defendants assert several acts of monopolization, including referring to defendants' parts as "bogus," "unauthorized," "unsafe," or "obsolete," claiming

nonexistent proprietary rights, predatory pricing, and unlawful tying agreements. Defendants assert these same claims under the Texas antitrust statute, Tex. Bus. & Com. Code. § 15.05(a), (c) & (d) (Vernon 2002).

Defendants also bring a claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). They allege that Rolls-Royce has placed captions on its maintenance and service publications concerning the Model 250 that constitute false or misleading representations of fact.

Further, defendants allege that Rolls-Royce's wrongful conduct has tortiously interfered with defendants' business relationships with customers. Finally, defendants seek a declaratory judgment that Rolls-Royce has no proprietary interest in several design data documents.

D

Rolls-Royce moves to strike portions of defendants' counterclaims under Rule 12(f), contending they rely on events that are time-barred. And it moves for leave to amend its complaint to join Hiatt and Action, who Rolls-Royce alleges also misappropriated its proprietary data for the Model 250.

The court first addresses defendants' Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

A

In their motion to dismiss, defendants maintained that the court lacked personal jurisdiction over all defendants. Rolls-Royce responded that personal jurisdiction was premised on RICO's nationwide service of process provision, 18 U.S.C. § 1965, and that the court also had specific personal jurisdiction over all defendants under the Texas long arm statute, Tex. Civ. Prac. & Rem. Code § 17.042 (Vernon 1997). In reply, defendants argued that Rolls-Royce's RICO claims were barred by res judicata and collateral estoppel based on a prior RICO-based lawsuit that Rolls-Royce brought against defendants in Indiana in 2004. *See Rolls-Royce Corp. v. Alcor Engine Co.*, 2007 WL 1021450 (S.D. Ind. Mar. 29, 2007) ("*Alcor Engine*"). In *Alcor Engine* the United States District Court for the Southern District of Indiana dismissed the complaint for failure to state a RICO claim and for lack of personal jurisdiction. *Id.* at *1, *5, *8-*12. Thus defendants argued that Rolls-Royce could not establish personal jurisdiction over them based on RICO's nationwide service of process provision. In their reply, defendants also denied that the court had specific personal jurisdiction over Kajberouni, but they were silent as to the other two defendants.

Shortly after filing their reply, defendants filed a motion to withdraw their challenge to specific personal jurisdiction with respect to Hye-Tech and Heros. Although they conceded that the court could exercise specific personal jurisdiction over Hye-Tech and Heros under the Texas long arm statute, they renewed their contention that the court cannot exercise personal jurisdiction over any defendant based on RICO's nationwide service of process provision and that Rolls-Royce's RICO claims are barred by res judicata and collateral estoppel. Defendants also repeated their contention that the court did not have general personal jurisdiction over any defendant.

B

Before analyzing defendants' challenge to the exercise of personal jurisdiction, the court must determine the breadth of defendants' admission that the court has specific personal jurisdiction over Hye-Tech and Heros.

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Data Disc. Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)); *see also* 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1069.7, at 226 (3d ed. 2002) ("[I]t is important to remember that a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she

asserts."). In conceding that the court has specific personal jurisdiction over Hye-Tech and Heros, defendants have not specified the causes of action to which their admission applies. But their contention that the court does not have personal jurisdiction over any defendant based on RICO, or have general personal jurisdiction over any defendant, indicates that defendants' admission as to specific personal jurisdiction applies only to some of Rolls-Royce's claims.[5]

"The district court's exercise of specific jurisdiction is appropriate only when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). In its response brief, Rolls-Royce explicitly connects only its reverse palming off claim with Hye-Tech and Heros's contacts with the state of Texas. Rolls-Royce alleges that Heros and Hye-Tech collaborated in selling genuine Rolls-Royce parts to consumers in Texas while they represented to these consumers that these parts were their own. The court agrees that these contacts directly relate to Rolls-Royce's Lanham Act claim. *See* 15 U.S.C. § 1125(a)(1) ("Any

---

[5]If defendants conceded that the court could exercise specific personal jurisdiction over them as to all of Rolls-Royce's claims, their arguments as to general personal jurisdiction and personal jurisdiction under RICO would, of course, be irrelevant.

person who . . . in connection with any goods or services . . . uses in commerce . . . any false designation of origin . . . which . . . is likely to cause confusion . . . as to the origin . . . of his or her goods . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."). Rolls-Royce avers that Hye-Tech and Heros have the following additional contacts with the state of Texas: Heros has done at least $300,000 of business in Texas; Hye-Tech has done more than $200,000 of business in Texas; and they both use the same parts distributor, who is located in Texas. All of Rolls-Royce's claims, other than its Lanham Act claim, allege that defendants stole or misappropriated Rolls-Royce's proprietary design data for the Model 250. Without greater factual specificity, however, it is unclear how Hye-Tech's and Heros's general business sales in Texas, and their joint use of a Texas distributor, directly relate to allegations of stolen and misappropriated design data. Thus the court construes defendants' admission that the court has specific personal jurisdiction over Hye-Tech and Heros under the Texas long arm statute as covering only Rolls-Royce's Lanham Act claim.

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Rolls-Royce must therefore carry the burden of establishing

personal jurisdiction over each defendant with respect to its nine other claims and establishing personal jurisdiction over Kajberouni with regard to its Lanham Act claim.

III

Because it potentially resolves other personal jurisdiction issues, the court first determines whether RICO's nationwide service of process provision, 18 U.S.C. § 1965, confers on this court personal jurisdiction over defendants as to Rolls-Royce's two RICO claims.

A

Defendants posit that the court should dismiss Rolls-Royce's RICO claims under Rule 12(b)(6) because they are barred by res judicata and collateral estoppel. If dismissal of Rolls-Royce's RICO claims based on either of these affirmative defenses is proper, then Rolls-Royce cannot establish personal jurisdiction over defendants under 18 U.S.C. § 1965.

1

Rolls-Royce first argues that the court should not consider defendants' Rule 12(b)(6) challenge to its RICO claims because defendants failed to raise res judicata and collateral estoppel as grounds for dismissal in their initial motion to dismiss and brief. Rather, defendants first raised these affirmative defenses as grounds for dismissal in their reply brief. This court has previously declined to consider arguments raised for the first time

in a reply brief in support of a Rule 12(b)(6) motion. *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.) ("The [defendant] raised its third argument for the first time in its reply brief and the court will not consider it in deciding the motion to dismiss." (footnote omitted)). "The purpose of a reply brief under local rule 7.1(f) is to rebut the nonmovants' response, thereby persuading the court that the movant is entitled to the relief requested by the motion." *Pa. Gen. Ins. Co. v. Story*, 2003 WL 21435511, at *1 (N.D. Tex. June 10, 2003) (Fish, C.J.) (internal quotations and brackets omitted). "Consequently, a court generally will not consider arguments raised for the first time in a reply brief." *Id.*

There are facts in the present case, however, that counsel in favor of addressing defendants' res judicata and collateral estoppel arguments. Rolls-Royce's complaint clearly states two causes of action under RICO, but its section entitled "Jurisdiction and Venue" asserts that personal jurisdiction is premised on Texas' long arm statute and does not mention RICO as a basis for personal jurisdiction. Although, given the parties' prior litigation history in *Alcor Engine* (where personal jurisdiction under RICO was the main issue), defendants should have been on notice that Rolls-Royce was relying on RICO as a ground for establishing personal jurisdiction, Rolls-Royce has had an adequate opportunity to

respond to defendants' res judicata and collateral estoppel arguments. Rolls-Royce filed a pleading in which it specifically addressed the res judicata and collateral estoppel arguments, and defendants filed a pleading devoted exclusively to these issues. Moreover, although defendants did not raise these arguments in their motion to dismiss and brief, they did assert res judicata and collateral estoppel as affirmative defenses in their responsive pleading. The court will therefore address the res judicata and collateral estoppel arguments as grounds for relief under Rule 12(b)(6).

2

Rolls-Royce next argues that affirmative defenses such as res judicata and collateral estoppel are not usually considered in a motion to dismiss because a plaintiff is not required to negate an affirmative defense in its complaint.

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)); *see also Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 921 (2007) ("Whether a particular ground for opposing a claim may be the basis for

dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."); *EPCO Carbon Dioxide Prods., Inc. v. J.P. Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *Kansa Reinsurance Co. v. Congressional Mtg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) ("[W]hen a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." (citing *Clark*, 794 F.2d at 970)).

The Fifth Circuit has affirmed the granting of a Rule 12(b)(6) motion on res judicata grounds. *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386-87 (5th Cir. 2005). This court has also dismissed claims based on a res judicata defense raised by a Rule 12(b)(6) motion to dismiss. *Yeckel v. The Carl B. & Florence E. King Found. Retirement Pension Plan & Welfare Benefit Program*, 2006 WL 2434313, at *7 (N.D. Tex. Aug. 21, 2006) (Fitzwater, J.). Thus if a res judicata or collateral estoppel defense is established on the face of Rolls-Royce's complaint, it is a proper ground for dismissal.

B

In deciding defendants' motion, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*,

- 15 -

495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007)). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Id.* (quoting *Bell Atl.*, 127 S. Ct. at 1965). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl.*, 127 S. Ct. at 1964-65 (citations, quotation marks, and brackets omitted).

"Federal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). Therefore, the court may rely on the *Alcor Engine* decision in determining whether, on the face of Rolls-Royce's complaint, it appears that the RICO claims are barred by res judicata or collateral estoppel.

### C

"Preclusion of a claim under res judicata principles requires four elements: (1) the parties must be identical in the two

actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007).

Rolls-Royce argues that because the complaint in *Alcor Engine* was dismissed "without prejudice," *Alcor Engine* was not a final judgment on the merits and thus cannot serve as the basis of a res judicata defense.

The defendants in *Alcor Engine* moved to dismiss Rolls-Royce's RICO claim under both Rules 12(b)(2) and 12(b)(6). *Alcor Engine*, 2007 WL 1021450, at *1. Rolls-Royce's RICO claim in *Alcor Engine* was factually similar to its RICO claims in this action, but it was based on the predicate act of mail fraud, 18 U.S.C. § 1341, rather than of interstate transportation of stolen property, 18 U.S.C. § 2314. *Id.* at *4. The *Alcor Engine* defendants moved to dismiss plaintiff's RICO claim for failing to adequately plead with particularity the "enterprise" and "conduct" elements. *Id.* The court applied the pleading standard of Rule 9(b) to the complaint and held that Rolls-Royce had failed to state a valid claim on these grounds. *Id.* at *5. The Rule 12(b)(2) motion was related, because Rolls-Royce sought to establish personal jurisdiction over the defendants through RICO's nationwide service of process provision. The court concluded that, because Rolls-Royce had

failed to state a valid RICO claim, the court could not acquire personal jurisdiction on this basis. *Id.* at *8-*9. The court also analyzed personal jurisdiction under Indiana's long arm statute, but held that the defendants lacked the minimum contacts with the forum state. The court therefore granted defendants' motion to dismiss based on a lack of personal jurisdiction. *Id.* at *8-*12. In a separate document, the court dismissed Rolls-Royce's complaint "without prejudice."

To the extent that the *Alcor Engine* court dismissed under Rule 12(b)(6), it did not adjudicate the case on the merits because the dismissal was without prejudice. "A dismissal without prejudice is not an adjudication on the merits and thus does not have a *res judicata* effect." *Hughes v. Lott*, 350 F.3d 1157, 1161 (11th Cir. 2003); *see also Santana v. City of Tulsa*, 359 F.3d 1241, 1246 n.3 (10th Cir. 2004) ("Generally, a dismissal without prejudice is a dismissal that does not operate as an adjudication upon the merits, and thus does not have res judicata effect." (quotation marks, citation, and brackets omitted)); *In re Hallahan*, 936 F.2d 1496, 1499 n.2 (7th Cir. 1991) ("The case was dismissed without prejudice, and such a dismissal has no *res judicta* effect."); *Rinieri v. News Syndicate Co.*, 385 F.2d 818, 821 (2d Cir. 1967) ("[A] dismissal without prejudice permits a new action (assuming the statute of limitations has not run) without regard to res judicata principles[.]").

In *Elfenbein v. Gulf & Western Industries, Inc.*, 590 F.2d 445 (2d Cir. 1978), the Second Circuit held that a lawsuit dismissed without prejudice is not an adjudication upon the merits, and "a subsequent suit will not be barred by the doctrine of Res judicata." *Id.* at 449. The panel indicated that the distinction between "with prejudice" and "without prejudice" bears principally on the issue of res judicata: "We also strongly suggest to the district courts that they use the terms 'with prejudice' or 'without prejudice' only when making a determination as to the Res judicata effect of the dismissal." *Id.*

In *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), the Supreme Court addressed the meaning of "dismissal without prejudice." "[A]n adjudication upon the merits is the opposite of a dismissal without prejudice." *Id.* at 505 (internal quotation marks omitted).

> The primary meaning of "dismissal without prejudice," we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim. That will also ordinarily (though not always) have the consequence of not barring the claim from *other* courts, but its primary meaning relates to the dismissing court itself. Thus Black's Law Dictionary (7th ed. 1999) defines "dismissed without prejudice" as "removed from the court's docket in such a way that the plaintiff may refile the same suit on the same claim," and defines "dismissal without prejudice" as "[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period."

*Id.* at 505-06 (some citations omitted).

Defendants cite two cases for the proposition that dismissal pursuant to Rule 12(b)(6) amounts to a final judgment on the merits for purposes of res judicata: *Tartt v. Northwest Community Hospital*, 453 F.3d 817, 822 (7th Cir. 2006), and *Cameron v. Church*, 253 F.Supp.2d 611, 618-19 (S.D.N.Y. 2003). Neither, however, distinguishes between "dismissal with prejudice" and "dismissal without prejudice," and each appears to assume that the prior lawsuit was dismissed *with* prejudice. This construction is strengthened by other cases that cite the same proposition but demonstrate that it is valid only for dismissals with prejudice. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 832 (9th Cir. 2003) ("The district court's Rule 12(b)(6) dismissal with prejudice operates as an adjudication on the merits of the claims under Fed. R. Civ. P. 41(b)."), *abrogated in part by Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) (en banc); *Rinehart v. Locke*, 454 F.2d 313, 315 (7th Cir. 1971) ("[W]e are persuaded that under the Rule an order of a district court which dismisses a complaint for failure to state a claim, but which does not specify that the dismissal is without prejudice, is res judicata as to the then existing claim which it appears plaintiff was attempting to state."). These statements indicate that a Rule 12(b)(6) dismissal without prejudice does not have a res judicata effect. In another case, the Sixth Circuit stated the same point that defendants

advance: "It is well established that the sustaining of a motion to dismiss for insufficiency of the complaint serves as an adjudication on the merits *unless* the court specifies otherwise." *Guzowski v. Hartman*, 849 F.2d 252, 255 (6th Cir. 1988). After determining that the prior suit was dismissed without prejudice, the court held that this earlier suit did not preclude a later one with the same claims. *Id.*

To the extent the court in *Alcor Engine* dismissed Rolls-Royce's RICO complaint under Rule 12(b)(2), the dismissal likewise was not entitled to res judicata effect. Dismissals for lack of jurisdiction "are not considered adjudications on the merits and ordinarily do not, and should not, preclude a party from later litigating the same claim, provided that the specific defect has been corrected." *Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); *see also Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 875 (3d Cir. 1944) ("The dismissal of the complaint in such a situation, however, results solely from the lack of jurisdiction of the court and is, therefore, not an adjudication on the merits of the cause of action. Consequently such a dismissal does not prejudice the right of the plaintiff to file another complaint when and if it appears that the court may obtain jurisdiction of the person of the defendant."); 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4432, at 52 (2d ed. 2002) ("A judgment dismissing an action for

want of personal jurisdiction, for example, may be clearly final and preclusive on the jurisdiction issue, but it is not on the merits for purposes of claim preclusion."). Thus *Alcor Engine*'s dismissal under Rule 12(b)(2) does not prevent Rolls-Royce from filing the same claims in another court where it appears that defendants are amenable to suit.

The court therefore denies defendants' motion to dismiss on the basis of res judicata.

D

"Issue preclusion, formerly known as collateral estoppel, applies when the following elements are met: (1) the issue at stake must be identical to the one involved in the prior action; (2) the issue must have been actually litigated in the prior action; and (3) the determination of the issue in the prior action must have been a part of the judgment in that earlier action." *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999). Because, unlike res judicata, collateral estoppel does not require a final judgment on the merits, the court's conclusions as to the res judicata issue do not prevent application of collateral estoppel. Issue preclusion does require, however, that the issues in the two suits be identical. This requirement is fatal to defendants' collateral estoppel defense.

In *Alcor Engine* the principal issue in the Rule 12(b)(6) motion to dismiss was whether Rolls-Royce had pleaded with

sufficient particularity various elements of its RICO claim. *Alcor Engine*, 2007 WL 1021450, at *4. Because Rolls-Royce based its RICO claim on the predicate act of mail fraud, the court analyzed the adequacy of Rolls-Royce's pleadings under the Rule 9(b) pleading standard. *Id.* In the present suit, however, Rolls-Royce bases its RICO claims on the predicate act of interstate transportation of stolen property. *See* 18 U.S.C. § 2314. This racketeering activity does not involve fraud that triggers the pleading requirements of Rule 9(b).[6] Instead, the less-demanding pleading standard of Rule

_____

[6]Some courts have made statements that would appear to subject all civil RICO claims to Rule 9(b)'s heightened pleading standard regardless of the predicate act on which the RICO claim is based. *See, e.g., Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."). This is not, however, the law in this circuit. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("[Rule] 9(b) applies to . . . RICO claims resting on allegations of fraud." (citing *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992)); *Tel-Phonic Servs.*, 975 F.2d at 1138 (5th Cir. 1992) ("[Rule 9(b)] applies to the pleading of fraud as a predicate act in a RICO claim[.]"). Nor is it the law of some other circuits. *See, e.g., First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) ("Allegations of bankruptcy fraud [in a civil RICO claim], like all allegations of fraudulent predicate acts, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)"); *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002) ("Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)."); *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001) ("[A]llegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of [Rule] 9(b)[.]"); *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (holding that district court erred in applying the Rule 9(b) pleading standard to a civil RICO claim predicated on extortion because it did not involve an allegation of fraud); *Lancaster Cmty Hosp. v. Antelope Valley Med.*

8(a) applies to Rolls-Royce's RICO claim in this case. The court concludes that the issues litigated in the *Alcor Engine* Rule 12(b)(6) motion are not identical to any issue presented in Rolls-Royce's current suit.

The same is true for the issues decided in the Rule 12(b)(2) motion in *Alcor Engine*. Rolls-Royce sought to establish personal jurisdiction over the defendants on the basis of RICO's nationwide service of process provision. *Alcor Engine*, 2007 WL 1021450, at *7. But because Rolls-Royce failed to state a valid RICO claim, the court did not decide any issues concerning personal jurisdiction on the basis of RICO. *Id.* at *8-*9. While the court did actually decide the issue of the defendants' minimum contacts with the state of Indiana under a long arm statute is effectively identical to the one adopted in the state of Texas, the issue of the defendants' minimum contacts with the state of Texas is an essentially different inquiry. Thus the court concludes that the personal jurisdiction issues in *Alcor Engine* are not identical to those in the present suit.

The court therefore denies defendants' motion to dismiss on the basis of collateral estoppel.

---

*Group, Inc.*, 940 F.2d 397, 405 (9th Cir. 1991) ("The Ninth Circuit has repeatedly insisted that [Rule 9(b)] be followed in RICO actions alleging the predicate act of mail fraud.").

IV

The court now determines whether RICO's nationwide service of process provision confers on this court personal jurisdiction over the defendants as to Rolls-Royce's two federal RICO claims.

A

"A federal court obtains personal jurisdiction over a defendant if it is able to serve process on him." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986); *see Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996) ("Before a court may exercise personal jurisdiction over a defendant, the defendant must be amenable to service of process under some federal or state statute."). "In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant; and (2) the service of process must comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997); *see also Butcher's Union*, 788 F.2d at 538.

18 U.S.C. § 1965, a RICO provision, provides for nationwide service of process.[7] As the Second Circuit has noted, a circuit

_____

[7]18 U.S.C. § 1965:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

split has developed on the issue of which subsection of § 1965 confers nationwide service of process. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 70 (2d Cir. 1998). The Second, Seventh, Ninth, and Tenth Circuits have determined that § 1965(b) is the provision that grants nationwide service of process. *Id.* at 71; *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987); *Butcher's Union*, 788 F.2d at 538-39; *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1230 (10th Cir. 2006). The Fourth and Eleventh Circuits have concluded that § 1965(d) is the

---

(b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

subsection that authorizes nationwide service of process. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626-27 (4th Cir. 1997); *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 942 (11th Cir. 1997). The Fifth Circuit has not yet decided the issue, but one federal district court in Texas has sided with the Second, Seventh, Ninth, and Tenth Circuits. *See Hawkins v. The Upjohn Co.*, 890 F. Supp. 601, 605-06 (E.D. Tex. 1994).

As the Tenth Circuit observed, the first court to analyze § 1965's full text and offer reasoning for its choice of subsections was the Second Circuit in *PT United Can*. *See Cory*, 468 F.3d at 1230. The Second Circuit concluded that, in light of § 1965(a) and (c), § 1965(b)'s use of "other parties" and § 1965(d)'s use of "other process" makes sense only if § 1965(b) is the nationwide service of process provision and § 1965(d) covers process other than a summons of a defendant or a subpoena of a witness provided for in § 1965(c). *PT United Can*, 138 F.3d at 71-72. The Eleventh and Fourth Circuits' opinions do not even acknowledge the contrary position. The court agrees with *PT United Can*'s reasoning and joins the majority of courts in concluding that § 1965(b) is the relevant provision for nationwide service of process for RICO civil claims.

Section 1965, however, places limitations on nationwide service of process that do not exist in other nationwide service of process statutes. *Hawkins*, 890 F. Supp. at 606 (analyzing the key

difference between 18 U.S.C. § 1965 and an analogous provision in the Securities Exchange Act). The language of § 1965(a), read together with § 1965(b)'s phrase "other parties," persuades the court that before a defendant is subject to nationwide service of process under § 1965(b), the plaintiff must establish personal jurisdiction over at least one defendant under § 1965(a). Other courts have interpreted § 1965 similarly. *See PT United Can*, 138 F.3d at 71; *Butcher's Union*, 788 F.2d at 539; *Hawkins*, 890 F. Supp. at 606.

Requiring that the plaintiff establish jurisdiction over at least one defendant under § 1965(a) before nationwide service of process is available is consistent with *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916 (5th Cir. 1987) (per curiam). In *Caldwell* the panel addressed the plaintiffs' argument that RICO conferred personal jurisdiction over the defendants on the basis of RICO's nationwide service of process provision. *Id.* at 918. The court concluded that

> the plaintiffs fail to address the language in § 1965(a) that provides a civil action may be instituted where a defendant "resides, is found, has an agent, or transacts his affairs." A number of district courts have held that this language requires that a defendant be conducting business in the forum.

*Id.* Because none of the defendants conducted business in the forum state, the court held that "[t]he RICO statute does not provide a basis for in personam jurisdiction in this case." *Id.* The court's

reasoning suggests that a plaintiff must establish personal jurisdiction over one of the defendants under § 1965(a) before relying on RICO's nationwide service of process provision to obtain personal jurisdiction over other defendants.

Although a number of courts have construed § 1965(a)'s "transacts his affairs" language to require traditional minimum contacts analysis under the state's long arm statute, *PT United Can*, 138 F.3d at 71; *Butcher's Union*, 788 F.2d at 539-40; *Hawkins*, 890 F. Supp. at 606, the court need not address this issue because another of § 1965(a)'s specific grounds for amenability to service of process applies in this case. Section 1965(a) states that suit may be brought in any federal district "in which [the defendant] resides, *is found*, *has an agent*, or transacts his affairs." (emphasis added). The court interprets "is found" to mean that the defendant was in the state when served with the complaint.

In its response motion, Rolls-Royce asserts that "Kajberouni was in Dallas on May, 11, 2007 attending a deposition of Stormy Starr ["Starr"] on the same day his lawyer accepted service of process[.]" P. Resp. 8. Kajberouni's lawyer in this suit is Edward A. McConwell, Esquire ("McConwell"), who waived service of summons on behalf of Kajberouni on June 8, 2007. The waiver indicates that the service of process was accepted on May 11, 2007. Attached to Rolls-Royce's response are a few pages of the May 11, 2007 Starr deposition. P. Resp. App. 20-22. This transcript

indicates that both Kajberouni and his lawyer, McConwell, attended the deposition. Defendants do not deny that Kajberouni and McConwell were in Texas when McConwell accepted service of process on behalf of Kajberouni. Therefore, the court has personal jurisdiction over Kajberouni under § 1965(a) because Kajberouni "was found" in the state of Texas when his lawyer accepted service of process on his behalf.

B

Having decided that Rolls-Royce has satisfied § 1965(a) as to Kajberouni, the court must now determine whether RICO's nationwide service of process provision grants personal jurisdiction over the other two defendants.

Section 1965(b) permits nationwide service of process on all the "other parties" when "the ends of justice require." The Ninth Circuit has interpreted "the ends of justice" to require that "the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher Union*, 788 F.2d at 539. In other words, under the Ninth Circuit's construction of § 1965(b), if there exists a federal district that has personal jurisdiction over all of the defendants, then the plaintiff cannot employ nationwide service of process. If this construction of § 1965(b) is correct, Rolls-Royce cannot establish jurisdiction over Hye-Tech and Heros on its RICO claims because all the defendants are citizens of

California,[8] and all the courts in California have personal jurisdiction over the defendants.

In *Cory* the Tenth Circuit rejected *Butcher Union*'s narrow construction of "the ends of justice." *Cory*, 468 F.3d at 1231-32. Following the Ninth Circuit's interpretation, the district court in *Cory* concluded that § 1965(b)'s nationwide service of process did not apply because all the defendants in the case were subject to personal jurisdiction in the state of Pennsylvania. *Id.* at 1231. The Tenth Circuit held that the district court had erred: "We disagree with the district court's interpretation of the 'ends of justice,' as it comports with neither the congressional directive to 'liberally construe[ ] [RICO] to effectuate its remedial purposes,' H.R. Rep. No. 91-1549 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4036, nor the antitrust legislation on which RICO was modeled, *see id.* at 4034." *Id.* at 1231-32. The court reasoned:

> RICO was intended as a means to eradicate organized crime. *See* Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 923. That purpose is not furthered by withholding nationwide service of process whenever all of the RICO defendants could be haled into one court for a single trial. While the district court's construction of the "ends of justice" might promote judicial economy, it might also mean that some RICO

---

[8]Although Rolls-Royce does not appear to allege explicitly Kajberouni's citizenship, *see supra* note 4, the court assumes on the basis of Rolls-Royce's other allegations that he is a citizen of California.

- 31 -

> violations would go unpunished whenever
> organized criminals operate within the same
> locale and cause harm in a distant state.
> Insulating such a criminal enterprise from
> liability, when, for instance, the victim is
> unable to finance long-distance litigation, is
> not consistent with RICO's purpose.

*Id.* at 1232. The court noted that a number of antitrust statutes, such as the Sherman Act, 15 U.S.C. § 5, and the Wilson Tariff Act, 15 U.S.C. § 10, require "ends of justice" analysis before allowing "other parties," whether they live in or out of the state, to be summoned before the court. *Id.* "The Supreme Court has rejected the notion that a confluence of defendants within a single judicial district controls the 'ends of justice' analysis." *Id.* (citing *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 46 (1911); *United States v. Standard Oil Co. of N.J.*, 152 F. 290, 296 (C.C.E.D. Mo. 1907) (providing further background on the personal jurisdiction issue)). "Accordingly, we conclude that the 'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum. In so holding we disagree with the Ninth Circuit, which reached the contrary conclusion by inadequately considering the congressional intent underlying RICO and by ignoring federal antitrust legislation." *Id.* The *Cory* court, however, did not offer a competing definition of "the ends of justice" in § 1965(b).

The court agrees with the reasoning of *Cory* and declines to follow the Ninth Circuit's restrictive interpretation of § 1965(b).

Similarly, the court refrains from adopting a definition of "the ends of justice," because the court is convinced that the ends of justice require application of nationwide service of process in this case. The court has personal jurisdiction over Kajberouni as to Rolls-Royce's RICO claims under § 1965(a). Kajberouni is the President and a substantial shareholder of Heros and is a member and the Chief Executive Officer of Hye-Tech. Kajberouni's counsel, McConwell, is also representing Hye-Tech and Heros in this suit. Hye-Tech and Heros have already conceded that their contacts with the state of Texas are sufficient to confer on the Texas forum personal jurisdiction over them with respect to one of the causes of action in this suit. Hye-Tech and Heros do not deny that they have a parts distributor located in Texas, and that together they have done more than $500,000 of business within the state, though they do argue that these contacts are insufficient to confer general personal jurisdiction over them.[9] Taking all these facts into consideration, the court concludes that the ends of justice require application of § 1965(b)'s nationwide service of process provision.

C

"[W]hen a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal

_____

[9]The court need not decide whether these business contacts make Hye-Tech and Heros amenable to suit based on general personal jurisdiction.

statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States." *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (applying national minimum contacts test to suit brought under the Securities and Exchange Act of 1934). While the expansive minimum contacts test under a nationwide service of process provision does not obviate due process concerns, the Fifth Circuit has also held that, in the context of a nationwide service of process provision, "it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States." *Id.* Although another Fifth Circuit panel has criticized the principles of *Busch*. *See Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996) ("[W]e emphasize our disagreement with [*Busch*] to the extent it concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign."). But the panel applied *Busch* in full to ERISA's[10] nationwide service of process provision. *Id.* ("[W]e find that the instant case falls squarely within our *Busch* holding, and hold that the district court properly exercised personal jurisdiction over the [defendant] based on its

---

[10]Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

contacts with the United States."). Likewise, RICO's nationwide service of process provision falls squarely within *Busch*'s holding.

Thus the relevant inquiry is whether defendants have sufficient minimum contacts with the United States. Because Hye-Tech and Heros are citizens of California who reside in that state, they also reside in the United States. Hye-Tech's and Heros's contacts with the United States therefore render them amenable to service of process under § 1965(b). For the same reason (Hye-Tech and Heros reside in the United States), the court's exercise of personal jurisdiction over Hye-Tech and Heros under § 1965(b) satisfies due process concerns.

Thus the court holds that it has personal jurisdiction over all the defendants as to Rolls-Royce's two RICO claims.

V

Having reached this conclusion, the court must next decide whether it can exercise pendent personal jurisdiction over the defendants as to Rolls-Royce's remaining claims.

A

> Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim.

*United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002) (citing 4A Wright & Miller, *supra*, § 1069.7 (3d. ed. 2002), and later adopting the doctrine).  "In essence, once a district court has personal jurisdiction over a defendant for one claim, it may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction." *Id.* at 1272.  "[A] defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim.  Notions of fairness to the defendant simply are not offended in this circumstance."  4A Wright & Miller, *supra*, § 1069.7, at 228-29 (3d ed. 2002) (approving of pendent personal jurisdiction) (footnote omitted).

Although the Fifth Circuit has not yet addressed this doctrine of federal common law, the Tenth Circuit has noted that every circuit court to decide the issue has approved pendent personal jurisdiction. *Botefuhr*, 309 F.3d at 1273; *see Robinson Eng'g Co., Ltd. Pension Plan & Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000) (applying pendent personal jurisdiction over federal claim after acquiring personal jurisdiction on related federal claim); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362 (Fed. Cir. 2001) (authorizing pendent personal jurisdiction over declaratory

judgment action when personal jurisdiction was based on federal statute); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) (holding that district court had authority to exercise pendent personal jurisdiction over state-law claims because it had personal jurisdiction over defendant on factually related federal claims); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056-57 (2d Cir. 1993) (holding that district court had personal jurisdiction over defendants as to related state-law claims on basis of pendent personal jurisdiction, because personal jurisdiction was proper over same defendants under federal statute authorizing nationwide service of process); *Oetiker v. Jurid Werke, G.m.b.H.*, 556 F.2d 1, 4 (D.C. Cir. 1977) (approving of pendent personal jurisdiction); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-56 (3d Cir. 1973) (affirming district court's exercise of pendent personal jurisdiction over state-law claims that were factually related to Securities Act claim through which defendants were served with process under statute's nationwide service of process provision). Since the Tenth Circuit's decision in *Botefuhr*, the Ninth Circuit has joined the other seven circuit courts in authorizing district courts to exercise pendent personal jurisdiction. *See Action Embroidery*, 368 F.3d at 1181.

These cases make clear that, as with supplemental subject matter jurisdiction, the exercise of pendent personal jurisdiction remains discretionary with the court. *See Action Embroidery*, 368

F.3d at 1181; *Botefuhr*, 309 F.3d at 1273; *Oetiker*, 556 F.2d at 5.
Two of these cases dealt with exercising pendent personal
jurisdiction over state-law claims arising out of the same nucleus
of operative fact as the federal claim under which the court
obtained personal jurisdiction over the defendants by virtue of the
federal statute's nationwide service of process provision. *IUE
AFL-CIO Pension Fund*, 9 F.3d at 1056-57; *Robinson*, 484 F.2d at 555-
56. One case involved the exercise of pendent personal
jurisdiction over a declaratory judgment action when personal
jurisdiction was found as to a factually related federal claim.
*Inamed Corp.*, 249 F.3d at 1362.

The court therefore concludes that, if Rolls-Royce's remaining
claims arise out of the same nucleus of operative fact as its RICO
claims, it is within the court's discretion to exercise pendent
personal jurisdiction over them.

B

1

The court must first determine which causes of action, if any,
arise out of the same nucleus of operative fact as Rolls-Royce's
RICO claims.

Rolls-Royce's first claim is for reverse palming off, under
the Lanham Act, 15 U.S.C. § 1125(a)(1). Rolls-Royce's basic
allegation is that defendants purchased original Rolls-Royce Model
250 parts and sold them as their own by representing to customers

that the parts were made by the defendants. Rolls-Royce's RICO claims implicate the following principal issues: whether Rolls-Royce has proprietary rights to certain design data for the Model 250; whether defendants knew that the Model 250 design data that they possessed was stolen; whether defendants shipped stolen design data in interstate commerce; and whether defendants' conduct constituted an enterprise. None of these issues overlaps with Rolls-Royce's reverse palming off claim. The court concludes that Rolls-Royce's Lanham Act claim does not arise out of the same nucleus of operative fact as the RICO claims. Accordingly, the court lacks authority to exercise pendent personal jurisdiction over defendants as to Rolls-Royce's Lanham Act claim. (The absence of pendent personal jurisdiction only affects Kajberouni, however, because the other two defendants have conceded specific personal jurisdiction on this claim.)

2

Rolls-Royce's remaining seven claims all involve issues that substantially overlap with the ones raised by its RICO claims. Rolls-Royce asserts a claim for misappropriation of a trade secret under the Indiana Trade Secret Act, Ind. Code § 24-2-3-1 *et seq*. (2006). Misappropriating a trade secret involves essentially the same conduct as the predicate act on which Rolls-Royce bases its RICO claims.

Rolls-Royce also sues for replevin to obtain the return of

proprietary data that it maintains was stolen. This claim presents the question whether the data was in fact stolen or unlawfully taken, a principal issue in Rolls-Royce's RICO claims.

Rolls-Royce alleges that defendants tortiously interfered with its business relationship with parts suppliers. While this cause of action in the abstract does not necessarily invoke the issues raised in Rolls-Royce's RICO claims, Rolls-Royce has specified the wrongful conduct element of this tort claim as defendants' unlawful acquisition of its proprietary design data. Thus this tort claim also arises out of the same nucleus of operative fact as the federal RICO claims.

Rolls-Royce's claim for theft of its design data under the Indiana Code § 35-43-4-2 (2004) clearly involves substantial overlap of issues with its RICO claims. Similarly, Rolls-Royce's state-law RICO claim is essentially the same as its federal RICO claims.

Rolls-Royce's common law claim for unjust enrichment hinges on whether defendants were unjustly enriched by misappropriating Rolls-Royce's proprietary design data. This claim also implicates the gravamen of the RICO claims and thus is factually related to them.

Finally, Rolls-Royce seeks a declaratory judgment under 28 U.S.C. § 2201 that defendants' approvals to make and service model 250 parts are void because they were based on misappropriated

Rolls-Royce design data. The principal issues in the RICO claims will also resolve this declaratory judgment action.

The court therefore concludes that, with the exception of Rolls-Royce's Lanham Act claim, its seven other claims arise out of the same nucleus of operative fact as do its federal RICO claims.

C

The court must now decide whether, in its discretion, it should subject defendants to defending themselves against these seven claims for which there may not be an independent predicate for personal jurisdiction.

Many of the pendent personal jurisdiction cases cited above involve district courts that had personal jurisdiction over just one claim and, on that basis, exercised pendent personal jurisdiction over factually related claims. But in the instant case, in addition to having personal jurisdiction over all the defendants based on two RICO claims, two defendants (Hye-Tech and Heros) concede that the court has specific personal jurisdiction over them based on an unrelated claim. Moreover, there is support for the premise that defendants who are already before the court to defend a federal claim rarely experience significant inconvenience arising from the requirement that they defend themselves against state claims involving issues that are nearly identical to the federal claim. *See* 4A Wright & Miller, *supra*, § 1069.7, at 228-29 (3d ed. 2002). The exercise of pendent personal jurisdiction also

serves the interest of judicial economy. The court therefore concludes, in its discretion, that it should exercise pendent personal jurisdiction over all the defendants with respect to Rolls-Royce's seven claims that arise out of the same nucleus of operative fact as do the two federal RICO claims.

Based on these holdings, the court concludes that it has personal jurisdiction over all the defendants as to all of Rolls-Royce's claims except for its claim against Kajberouni under the Lanham Act for reverse palming off. It is to that question that the court now turns.

VI

Rolls-Royce posits that, under Texas' long arm statute, Kajberouni's contacts with Texas confer specific personal jurisdiction over him with respect to Rolls-Royce's Lanham Act claim.[11]

A

When jurisdiction is founded "upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, [Rule 4] requires that the state's standard of amenability to jurisdiction apply." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983) (addressing former Rule 4(e)) (following *Burstein v.*

---

[11]Rolls-Royce does not contend that the court can exercise personal jurisdiction over Kajberouni based on general personal jurisdiction.

*State Bar of Cal.*, 693 F.2d 511, 514 (5th Cir. 1982)).  "[W]hen a
plaintiff invokes federal question jurisdiction and serves process
under a state long-arm statute, a federal court can assert
jurisdiction only if the state court could have done so."
*Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1371 (5th
Cir. 1986).

The Texas long arm statute authorizes the exercise of
jurisdiction over nonresidents "doing business" in Texas.  Tex.
Civ. Prac. & Rem. Code § 17.042 (Vernon 1997).  "The Texas Supreme
Court has interpreted the 'doing business' requirement broadly,
allowing the long arm statute to reach as far as the federal
Constitution permits."  *Gundle Lining*, 85 F.3d at 204 (citing
*Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (1990)).  "Consequently,
we will analyze the exercise of personal jurisdiction over
nonresidents with reference to federal constitutional limits."  *Id.*

> The Due Process Clause of the Fourteenth
> Amendment permits the exercise of personal
> jurisdiction over a nonresident defendant when
> (1) that defendant has purposefully availed
> himself of the benefits and protections of the
> forum state by establishing minimum contacts
> with the forum state; and (2) the exercise of
> jurisdiction over that defendant does not
> offend traditional notions of fair play and
> substantial justice.  To comport with due
> process, the defendant's conduct in connection
> with the forum state must be such that he
> should reasonably anticipate being haled into
> court in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnote
and internal quotation marks omitted).

"Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (citations omitted). For the court to properly exercise specific personal jurisdiction over Kajberouni as to Rolls-Royce's Lanham Act claim, Kajberouni must have purposefully directed his activities at Texas, and Rolls-Royce's reverse palming off claim must stem from alleged injuries that arise out of or relate to Kajberouni's activities directed at Texas. *See Berry v. Lee*, 428 F.Supp.2d 546, 552 (N.D. Tex. 2006) (Fitzwater, J.).

"When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, however, the nonmoving party need only make a prima facie showing, and the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Berry*, 428 F.Supp.2d at 552 (internal quotation marks omitted).

In determining whether Rolls-Royce has established a prima

facie showing for personal jurisdiction, the court may look beyond the pleadings "by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart*, 772 F.2d at 1192.

B

Rolls-Royce points to a number of purposeful contacts with the state of Texas reflected in its complaint and in the exhibits attached to its response brief, but none of these contacts specifically involves Kajberouni. Rolls-Royce seems to contend that because Kajberouni is the CEO of Hye-Tech and the President of Heros, the court acquires specific personal jurisdiction through Hye-Tech's and Hero's minimum contacts with the state of Texas. But under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation[.]" *Id.* at 1197, 1197 n. 11 ("Succinctly paraphrased, jurisdiction over an individual cannot be predicated upon jurisdiction over a corporation." (internal quotations omitted)).

Rolls-Royce also asserts that Kajberouni's tortious activity that is alleged in the complaint establishes a prima facie showing of personal jurisdiction over him.

> When a nonresident defendant commits a tort
> within the state, or an act outside the state
> that causes tortious injury within the state,
> that tortious conduct amounts to sufficient
> minimum contacts with the state by the
> defendant to constitutionally permit courts
> within that state, including federal courts,
> to exercise personal adjudicative jurisdiction
> over the tortfeasor and the causes of actions
> arising from its offenses or quasi-offenses."

*Guidry*, 188 F.3d at 628. Although Rolls-Royce has sufficiently alleged that Kajberouni was involved in tortious activity, its claim under the Lanham Act is not a tort. Even if it could be considered a tort, Rolls-Royce's argument still fails because Rolls-Royce has not alleged that it was injured by the tortious activity within the state of Texas. In fact, the complaint indicates that the injury from the alleged tortious conduct was felt in Indiana: "The Defendants knowingly and intentionally misappropriated Rolls-Royce's Design Data. Because the harm to Rolls-Royce exists at its corporate headquarters, the tort of misappropriation is deemed to have occurred in Indiana[.]" Compl. ¶ 95. Thus Kajberouni's allegedly tortious conduct cannot serve as a basis for exercising personal jurisdiction over him as to Rolls-Royce's Lanham Act claim.

Rolls-Royce has failed to establish a prima facie showing of specific personal jurisdiction over Kajberouni through his minimum contacts with the state of Texas.

By alleging that Hye-Tech, Heros, and Kajberouni are alter egos of each other, and by submitting evidence of this allegation in support of its response brief, Rolls-Royce is implicitly attempting to establish personal jurisdiction over Kajberouni through the minimum contacts of his alleged alter egos, Hye-Tech and Heros.[12] The fiduciary shield doctrine ordinarily prevents a court from acquiring personal jurisdiction over an individual through the contacts of his employer, but this principle "does not apply when courts are willing to disregard the corporate entity, usually on the theory that the individual or subsidiary is the alter ego of the corporation or parent." *Stuart*, 772 F.2d at 1197.

> [F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is the alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for purposes of *International Shoe* due process analysis.

*Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th

---

[12]*See Stuart*, 772 F.2d at 1198 (construing plaintiff's complaint and briefs liberally to state an attribution theory of personal jurisdiction).

Cir. 2002) (footnote omitted).

Hye-Tech and Heros concede that they have sufficient minimum contacts with Texas to create personal jurisdiction over them as to Rolls-Royce's Lanham Act claim. Thus if Rolls-Royce can satisfy its burden of demonstrating a prima facie case that either Hye-Tech or Heros was the alter ego of Kajberouni, then personal jurisdiction over Kajberouni is proper as to the Lanham Act claim against him.

"Under Texas law, '[a]lter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'" *SEC v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986)). Alter ego "is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry*, 721 S.W.2d at 272.

In its response, Rolls-Royce cites deposition testimony where Kajberouni states that Hye-Tech was set up to protect Heros, and that Hye-Tech and Heros shared inside information because they had common ownership. Rolls-Royce also points to a number of Heros

documents that bear Hye-Tech legends asserting that the documents contain trade secrets of Hye-Tech. The complaint also alleges that Heros facilitated Hye-Tech's sale of genuine Rolls-Royce parts as Hye-Tech's own imitation PMA parts, and that Hye-Tech and Heros have the same business address. This evidence and these allegations do not tend to prove that either Hye-Tech or Heros was the alter ego of Kajberouni. Rather, Rolls-Royce's complaint and jurisdictional evidence are directed at blurring the distinction between Hye-Tech and Heros, not Kajberouni and Hye-Tech or Kajberouni and Heros. Although Rolls-Royce's complaint does allege that, through Hye-Tech and Heros, Kajberouni participated in the theft of Rolls-Royce's trade secrets, this allegation is not of itself sufficient to make a prima facie showing of alter ego.

Therefore, the court does not have personal jurisdiction over Kajberouni as to Rolls-Royce's Lanham Act claim under a theory of alter ego.

D

To summarize, the court has personal jurisdiction over all the defendants as to all of Rolls-Royce's claims with one exception: the court lacks personal jurisdiction over Kajberouni as to Rolls-Royce's Lanham Act claim. The court therefore grants defendants' Rule 12(b)(2) motion to dismiss with respect to Kajberouni as to Rolls-Royce's Lanham Act claim, and it otherwise denies the motion.

Having settled the personal jurisdiction issues, the court now turns to defendants' Rule 12(b)(6) motion. Defendants maintain that the complaint fails to state valid alter ego claims under *Bell Atlantic*.

A

Although the court properly looked beyond the pleadings with respect to Rolls-Royce's attempt to establish personal jurisdiction over Kajberouni on a theory of alter ego, *Stuart*, 772 F.2d at 1192, the court will not consider Rolls-Royce's appendix evidence in deciding whether it has adequately pleaded an alter ego claim. *See In re Dengel*, 340 F.3d 300, 312 (5th Cir. 2003) (holding that, when a district court considers matters beyond the pleadings in the context of a Rule 12(b)(6) motion, the motion to dismiss is converted into a summary judgment motion). "Conclusory allegations of alter ego status will not survive a motion to dismiss." *Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594, 607 (N.D. Cal. 2007); *see also Med. Supply Chain, Inc. v. Gen. Elec. Co.*, 144 Fed. Appx. 708, 713 (10th Cir. 2005) (affirming ruling that complaint failed to adequately plead alter ego claim because it lacked any "factual allegations to support these conclusory statements."); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (affirming dismissal of alter ego claim because the pleadings were "devoid of *any* specific facts or circumstances

supporting this assertion.").

Rolls-Royce's complaint alleges that "Heros and Hye-Tech have the same business address.  For the purposes of this lawsuit, Heros, Hye-Tech and Kajberouni are *alter egos*." Compl. ¶ 6.  The complaint also avers that Kajberouni has an ownership interest in both Hye-Tech and Heros.  Aside from allegations that Kajberouni participated in illegal conduct through Heros and Hye-Tech, the complaint is devoid of any factual assertions to support Rolls-Royce's alter ego claim.  If Rolls-Royce's allegation that defendants helped each other commit illegal acts were a sufficient factual basis to support an alter ego claim, then plaintiffs would be able to state an actionable alter ego claim any time they could adequately allege participation by an owner of a company in the company's illegal conduct.  Because companies always act through their agents, permitting such allegations to withstand Rule 12(b)(6) dismissal is inconsistent with *Bell Atlantic*'s requirement that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*, 127 S. Ct. at 1974.  The court therefore holds that Rolls-Royce's complaint fails to state valid alter ego claims, and it grants defendants' Rule 12(b)(6) motion to the extent it seeks to dismiss these claims.

B

Although the court has concluded that Rolls-Royce's complaint is defective in this respect, it must decide whether to allow

Rolls-Royce to replead its alter ego claims.

> [I]n view of the consequences of dismissal on
> the complaint alone, and the pull to decide
> cases on the merits rather than on the
> sufficiency of pleadings, district courts
> often afford plaintiffs at least one
> opportunity to cure pleading deficiencies
> before dismissing a case, unless it is clear
> that the defects are incurable or the
> plaintiffs advise the court that they are
> unwilling or unable to amend in a manner that
> will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68

(N.D. Tex. 2005) (Fitzwater, J.) (internal quotation marks omitted)

(quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter &

Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (Fitzwater, J.)). Moreover,

the court concludes below that Rolls-Royce should be granted leave

to file a first amended complaint. If, as here, the court is

allowing Rolls-Royce to amend its complaint for other reasons, it

follows that Rolls-Royce should be given the opportunity to cure

the defects in pleading its alter ego claims.

## VIII

Rolls-Royce moves under Rule 12(f) to strike various

paragraphs of defendants' counterclaims as time-barred.[13]

---

[13]Rolls-Royce's motion to strike identifies ¶¶ 224-246, 251-253, 256-263, 276, and 282-286 as containing time-barred allegations. After the parties completed briefing the motion to strike, defendants filed an amended answer that slightly shifted the numbering regimen of the original answer. Rolls-Royce later filed a renewed motion to strike that directs the same arguments of the motion to strike at ¶¶ 225-247, 252-254, 257-264, 277, and 283-87 of defendants' first amended answer, filed December 12, 2007.

Rolls-Royce maintains that many of the factual allegations on which defendants rely in asserting their counterclaims are beyond the relevant statute of limitations periods and thus should be stricken. Defendants respond that, even if this contention is correct, these paragraphs properly support counterclaims under Tex. Civ. Prac. & Rem. Code § 16.069 (Vernon 1997) (the Texas statute that, *inter alia*, allows time-barred counterclaims to be asserted when they arise "out of the same transaction or occurrence that is the basis of an action[.]"), or support an affirmative defense under the equitable doctrine of recoupment.[14]

The court first addresses whether the defendants may assert, on the basis of the challenged portions of defendants' answer, an affirmative defense of recoupment or a counterclaim under Tex. Civ. Prac. & Rem. Code § 16.069. Because both recoupment and § 16.069 permit claims barred by the statuye of limitations, if defendants can assert a valid claim on either basis, plaintiff's motion to strike must be denied.

"Recoupment is a defense that goes to the foundation of plaintiff's claim by deducting from plaintiff's recovery all just

---

[14]Defendants also argue that Rule 12(f) is an improper motion in which to assert the statute of limitations. But because the court concludes that defendants can rely on the challenged paragraphs without regard to the statute of limitations, the court need not address this contention.

allowances or demands accruing to the defendant with respect to the same contract or transaction." *Distrib. Servs., Ltd. v. Eddie Parker Interests, Inc.*, 897 F.2d 811, 812 (5th Cir. 1990) (citing *Pa. R. Co. v. Miller*, 124 F.2d 160, 162 (5th Cir. 1941)). "As a purely defensive procedure, it is available to defendant so long as plaintiff's claim survives——even though an affirmative action by defendant is barred by limitations." *Id.; see also Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 675 (5th Cir. 2000) (referring to recoupment claim as affirmative defense). To assert a recoupment claim, "defendants must prove that (1) the plaintiff and defendant's claims arise from the same transaction, and (2) the plaintiff's action is timely." *Kadonsky v. United States*, 216 F.3d 499, 507 (5th Cir. 2000). "In the recoupment context, considering that it is an equitable claim, we have previously construed the term 'transaction' broadly." *Id.* The parties only dispute the "transaction" element of defendants' claim for recoupment.

C

Defendants assert first a RICO counterclaim[15] under 18 U.S.C. § 1962(c). They contend that Rolls-Royce committed the predicate racketeering act of mail fraud by falsely claiming proprietary

---

[15]The court uses the term "counterclaim" because, even if defendants are able to assert recoupment as an affirmative defense based on the factual allegations that Rolls-Royce challenges as time-barred, Rolls-Royce has not contested defendants' counterclaims to the extent they are based on factual allegations in other paragraphs of defendants' answer.

rights over public domain data with the purpose of driving competitors out of the secondary market for Model 250 parts. Defendants' basic allegation is that Rolls-Royce does not have a property interest in the design data for the Model 250 parts because much of this information was in the public domain without any security legends on these documents, long before Rolls-Royce began to assert a property interest over it. Whether Rolls-Royce has a property interest in the design data for the Model 250 that the defendants allegedly stole and misappropriated is a principal issue for nine of Rolls-Royce's ten causes of action. The court therefore concludes that defendants' RICO counterclaim under 18 U.S.C. § 1962(c) arises from the same transaction as do many of Rolls-Royce's claims.

Defendants' first RICO claim relies on all the factual allegations in the paragraphs that Rolls-Royce challenges as time-barred. Because defendants may assert their RICO counterclaim as an affirmative defense in recoupment, they may properly rely on events and occurrences beyond the statute of limitations. In its motion to strike, Rolls-Royce seeks only to strike some factual allegations in defendants' responsive pleading. Thus the court need not address whether defendants' remaining causes of action can also be asserted as claims for recoupment. Even if the paragraphs that Rolls-Royce challenges contain time-barred allegations, because they provide a proper factual foundation for at least one

of defendants' counterclaims, they should not be stricken.  The
court therefore denies Rolls-Royce's Rule 12(f) motion to strike.

IX

Roll-Royce moves for leave to amend its complaint to join
Hiatt and Action under Rule 20(a).

A

Because Rolls-Royce's November 30, 2007 motion for leave to
amend was filed before the December 1, 2007 deadline for such
motions, Rule 15(a) controls the court's decision whether to grant
the motion.  *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala.,
N.A.*, 315 F.3d 533, 536 (5th Cir. 2003).  Under Rule 15(a)(2),
"[t]he court should freely give leave when justice so requires."

> In the absence of any apparent or declared
> reason——such as undue delay, bad faith or
> dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice
> to the opposing party by virtue of allowance
> of the amendment, futility of amendment,
> etc.——the leave sought should, as the rules
> require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendants Heros, Hye-Tech, and Kajberouni oppose Rolls-
Royce's motion, contending that granting leave to amend would be
futile because the claims asserted against Hiatt and Action in the
proposed amended complaint are subject to dismissal.  *See Avatar
Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 321 (5th
Cir. 1991) ("We also affirm denials of motions to amend [under Rule

- 56 -

15(a)] when amendment would be futile."); *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968) (per curiam) ("Where a complaint, as amended, would be subject to dismissal, leave to amend [under Rule 15(a)] need not be granted."). Specifically, they maintain that the court does not have subject matter jurisdiction over the claims asserted against Hiatt and Action. They also posit that, even if subject matter jurisdiction is proper with respect to these claims, the factual allegations that support them are insufficient to state a claim under the pleading standard of *Bell Atlantic*.

Rolls-Royce's proposed first amended complaint asserts four state-law claims against Hiatt and Action.[16] Rolls-Royce argues that because it has already asserted related federal claims against Heros, Hye-Tech, and Kajberouni, subject matter jurisdiction as to the claims against Hiatt and Action is proper under 28 U.S.C. § 1367, the supplemental jurisdiction statute. Alternatively, Rolls-Royce maintains that the court has diversity jurisdiction over the new claims contained in the proposed first amended complaint.

B

Section 1367 provides, in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction,

---

[16]The four causes of action are misappropriation of trade secrets, replevin, conversion or theft, and unjust enrichment.

> the district courts shall have supplemental
> jurisdiction over all other claims that are so
> related to claims in the action within such
> original jurisdiction that they form part of
> the same case of controversy under Article III
> of the United States Constitution. *Such
> supplemental jurisdiction shall include claims
> that involve the joinder or intervention of
> additional parties.*

28 U.S.C. § 1367(a) (emphasis added). A principal purpose of § 1367 was to permit pendent party jurisdiction. *See* 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3567.2, at 124 (Supp. 2007). Under pendent party jurisdiction, "federal claims are levied against one defendant, while state law claims are alleged against a different, nondiverse defendant." *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1018 (5th Cir. 1993). "If the factual basis for both of these claims [is] 'sufficiently intertwined,' a federal court [can] adjudicate the state law claims against the pendent party." *Id.* The federal claim and the state-law claims are sufficiently intertwined when the claims "derive from a common nucleus of operative fact," *State National Insurance Co. v. Yates*, 391 F.3d 577, 579 (5th Cir. 2004) (internal quotation marks omitted), and the state and federal claims "ordinarily would be tried in one judicial proceeding." 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523.1, at 231 (Supp. 2007).

Rolls-Royce contends that its two federal RICO claims against Heros, Hye-Tech, and Kajberouni are sufficiently related to the

state-law claims it asserts against Hiatt and Action to make supplemental jurisdiction proper. The predicate act for both federal RICO claims is the transferring of stolen goods (Rolls-Royce's proprietary data related to the Model 250). The core of Rolls-Royce's state-law claims against Hiatt and Action is that they wrongfully obtained the same proprietary data that Heros, Hye-Tech, and Kajberouni allegedly transported in interstate commerce.

Although the RICO claims against Heros, Hye-Tech, and Kajberouni and the state-law claims against Hiatt and Action necessarily involve some related issues——whether Rolls-Royce had the proprietary rights to the Model 250 data and whether this data was stolen or obtained by improper means——the court concludes that they neither derive from a common nucleus of operative fact nor would they ordinarily be tried in one judicial proceeding. Hye-Tech and Heros are incorporated in the state of California and have their principal places of business there. Rolls-Royce does not allege the citizenship of Kajberouni, but he is the CEO of Hye-Tech and the President of Heros. Rolls-Royce alleges that Hiatt is a resident of Texas and that Action is a Texas limited partnership.[17] Although both Rolls-Royce's RICO claims against Heros, Hye-Tech,

---

[17]Of course, the fact that Action is a Texas limited partnership does not mean that Action is only a Texas citizen. The citizenship of a partnership is determined by the citizenship of each of its partners; therefore, a limited partnership is a citizen of the state of citizenship of each of its partners. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990).

and Kajberouni, and its state-law claims against Hiatt and Action, contend that Heros, Hye-Tech, and Kajberouni, and Hiatt and Action, wrongfully obtained Rolls-Royce's proprietary design data, Rolls-Royce does not allege that the two groups of defendants collaborated in any way. In other words, the means by which Hiatt and Action allegedly obtained the design data is not alleged to be related at all with the means by which Heros, Hye-Tech, and Kajberouni obtained it.[18] Moreover, because Rolls-Royce does not allege the timing of defendants' wrongful possession of the design data, it is possible that years separate when the two groups of defendants obtained Rolls-Royce's design data. Finally, the RICO claims against Heros, Hye-Tech, and Kajberouni, and the state-law claims against Hiatt and Action, involve many other unrelated issues by reason of the distinct elements of these different causes of action.

Rolls-Royce relies on *Rodriguez* as supporting exercise of supplemental jurisdiction of the claims asserted against Hiatt and Action. The *Rodriguez* panel held that supplemental jurisdiction over the plaintiff's state-law claims against his physician was proper where the plaintiff brought a related ERISA claim against his health insurance benefits provider. *Rodriguez*, 980 F.2d at

---

[18]Rolls-Royce's RICO claims do not necessarily involve the issue whether Heros, Hye-Tech, and Kajberouni stole Rolls-Royce's design data. The predicate act of transporting stolen goods in interstate commerce does not require that the defendant actually be the person who stole the goods in question.

1018.  The plaintiff sued his physician for refusing to write him a referral letter to see a specialist, and he sued the health insurance benefits provider for refusing to reimburse him for the medical treatment he received from the specialist.  *Id.* at 1016.  But the health insurance provider's decision not to reimburse the plaintiff's medical expenses was based solely on the plaintiff's failure to obtain a referral letter from his physician.  *Id.*  Thus the conduct of each defendant forming the basis of the plaintiff's two claims was closely intertwined.  Rolls-Royce's state law claims against Hiatt and Action are not similarly tied up with its RICO claims against Heros, Hye-Tech, and Kajberouni.  Therefore, the court cannot exercise supplemental jurisdiction over the claims against Hiatt and Action, and amending the complaint would be futile if subject matter jurisdiction is predicated on § 1367.

C

Rolls-Royce also contends that diversity jurisdiction is proper on the claims it asserts against Hiatt and Action.

Rolls-Royce is a Delaware corporation with its principal place of business in Indiana.  Action is a Texas limited partnership.  In its proposed first amended complaint, Rolls-Royce avers that Hiatt is a resident of Texas.  But an allegation of residency rather than citizenship is inadequate to invoke this court's jurisdiction.  *See Neeley v. Bankers Trust Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985) (holding that plaintiff's complaint failed to establish

diverse citizenship because "[a]n allegation of residency, however, does not satisfy the requirement of an allegation of citizenship"). Moreover, Rolls-Royce has not identified and pleaded the citizenship of Action's partners, and the citizenship of a partnership is determined by that of its partners. *See supra* note 17. Additionally, Heros, Hye-Tech, and Kajberouni point out that the proposed amended complaint does not allege that the amount in controversy exceeds $75,000, exclusive of interest and costs. In its reply brief, Rolls-Royce asserts that "[u]pon information and belief, the amount in controversy exceeds $75,000." P. Reply 1.[19] But this assertion in a reply brief does not form part of the proposed amended complaint. Thus the proposed amended complaint is also defective for purposes of establishing diversity jurisdiction because it fails to allege the amount in controversy. Nevertheless, if Rolls-Royce is able to cure these defects in an amended pleading, it will have established diversity jurisdiction over Hiatt and Action. Therefore, permitting Rolls-Royce leave to amend its complaint will not be futile for lack of subject matter jurisdiction.

---

[19]Rolls-Royce also states in reply that, after a deposition of Hiatt, who is the President of Action, Rolls-Royce will be able to ascertain more clearly the amount in controversy. Since the date of the deposition, however, Rolls-Royce has not filed anything with the court that purports to address this defect.

D

Heros, Hye-Tech, and Kajberouni argue that, even if subject matter jurisdiction is proper, granting Rolls-Royce leave to amend would be futile because the proposed first amended complaint fails to plead facts establishing that Hiatt and Action obtained Rolls-Royce's proprietary data in breach of a confidential relationship.[20] They posit that under *Bell Atlantic,* the proposed amended complaint's allegations are merely conclusory and cannot survive a motion to dismiss.

That Hiatt and Action obtained Rolls-Royce's proprietary design data in breach of a confidential relationship or by improper means is an essential element of its misappropriation claim. *See Spectrum Creations, L.P. v. Carolyn Kinder Int'l, L.L.C.*, 514 F.Supp.2d 934, 948 (W.D. Tex. 2007) (citing *Alacatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 784 (5th Cir. 1999)).[21]

---

[20]Although Heros, Hye-Tech, and Kajberouni only specifically attack the adequacy of Rolls-Royce's pleading concerning the misappropriation of a trade secret claim against Hiatt and Action, because Rolls-Royce's other three state-law claims against Hiatt and Action are grounded in the act of wrongfully obtaining the design data, the court construes this as a challenge to the adequacy of the pleadings as to all four claims.

[21]Defendants rely on Texas law as the basis for Rolls-Royce's misappropriation of a trade secret claim. Rolls-Royce relies on Indiana law as the basis for this claim. The court need not now decide which state's law applies, although it notes that the claim appears to be essentially the same under either state's law.

The proposed amended complaint alleges, in relevant part:

> The Hiatt Defendants have Rolls-Royce Design
> Data listed in Exhibit 3 in their possession.
> Rolls-Royce has given notice to the Hiatt
> Defendants that their possession and use of
> the Rolls-Royce Design Data listed in Exhibit
> 3 is wrongful and constitutes trade secret
> misappropriation, but the Hiatt Defendants
> have disregarded such notice and continued
> their wrongful use of the Rolls-Royce Design
> Data. On information and belief the Hiatt
> Defendants obtained some or all of the Rolls-
> Royce Design Data listed in Exhibit 3 from one
> or more different entities that had legal
> and/or contractual obligations to maintain the
> Design Data list in Exhibit 3 in confidence.

1st Am. Compl. ¶¶ 102-04 (emphasis omitted). Earlier in the complaint, Rolls-Royce devotes four pages to explaining its internal security measures to protect its design data—e.g., requiring employees to sign confidentiality agreements—and its external security measures to protect its design data—e.g., requiring its suppliers and distributors to sign non-disclosure agreements. Rolls-Royce does not specify the precise way in which Hiatt and Action acquired Rolls-Royce's design data, but such an allegation is not required under Rule 8(a)(2), which states that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The court concludes that Rolls-Royce has adequately pleaded that Hiatt and Action obtained Rolls-Royce's design data in breach of a confidential relationship. Because Rolls-Royce's pleading of its misappropriation of a trade secret

claim against Hiatt and Action would survive a motion to dismiss, granting Rolls-Royce leave to amend would not be futile in this respect.

If Rolls-Royce can cure the defects in pleading diversity jurisdiction that the court has identified above, granting Rolls-Royce leave to amend will not be futile. Because the futility of amendment is the sole ground on which Heros, Hye-Tech, and Kajberouni rely to oppose Rolls-Royce's motion, the court discerns no compelling reason under the liberal standard of Rule 15(a)(2) to deny Rolls-Royce's request for leave. *See Siesta Village Market, LLC v. Perry*, 530 F.Supp.2d 848, 861 (N.D. Tex. 2008) (Fitzwater, C.J.), *appeals docketed*, Nos. 08-10145 (5th Cir. Feb. 18, 2008), 08-10146 (5th Cir. Feb. 19, 2008), 08-10148 (5th Cir. Feb. 19, 2008), and 08-10160 (5th Cir. Feb. 21, 2008). Accordingly, the court grants Rolls-Royce's November 30, 2007 motion for leave to amend its complaint to join parties.[22]

*        *        *

For the reasons stated, the court grants in part and denies in part defendants' July 10, 2007 motion to dismiss for lack of personal jurisdiction; grants defendant's July 10, 2007 motion to dismiss pursuant to Rule 12(b)(6) (addressed to Rolls-Royce's alter ego claims); denies Rolls-Royce's July 27, 2007 motion to strike

---

[22]By granting Rolls-Royce leave to amend, the court suggests no view concerning the propriety of joining Hiatt and Action under Rule 20(a).

time-barred allegations from defendants' responsive pleading under Rule 12(f), and its December 14, 2007 renewed motion to strike time-barred allegations from defendants' responsive pleading under Rule 12(f); and grants Rolls-Royce's November 30, 2007 motion for leave to amend its complaint to join parties. Rolls-Royce must file its first amended complaint——electronically or on paper——within 30 days of the date this memorandum opinion and order is filed.[23] The August 30, 2007 motion of Heros and Hye-Tech to withdraw a specific jurisdiction defense as to the business entity defendants only is granted.

**SO ORDERED.**

March 25, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[23]This period will afford Rolls-Royce sufficient time to replead its alter ego claim, if it can.