IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROLLS-ROYCE CORPORATION, § | |
| § | |
| Plaintiff- § | |
| counterdefendant, § | |
| § Civil Action No. 3:07-CV-0739-D | |
| VS. § | |
| § | |
| HEROS, INC., et al., § | |
| § | |
| Defendants- § | |
| counterplaintiffs. § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff-counterdefendant's August 26, 2010 motion to alter or amend the court's July 29, 2010 memorandum opinion and order is denied.

I

The court assumes the parties' familiarity with the July 29, 2010 memorandum opinion and order, *see Rolls-Royce Corp. v. HEROS, Inc.*, No. 3:07-CV-0739-D (N.D. Tex. July 29, 2010) (Fitzwater, C.J.),[1] and briefly summarizes the pertinent background facts and procedural history.

Plaintiff-counterdefendant Rolls-Royce Corporation ("Rolls-Royce") sues defendants-counterplaintiffs H.E.R.O.S., Inc., Hye-Tech Manufacturing, LLC, and Heros Kajberouni, alleging, *inter*

---

[1]The court filed the memorandum opinion and order under seal. On August 18, 2010 it ordered the entire memorandum opinion and order to be unsealed. Although Rolls-Royce Corporation filed under seal its brief and reply brief in support of its motion to alter or amend, the court is not filing this memorandum opinion and order under seal.

*alia*, that defendants misappropriated Rolls-Royce's trade secrets. Defendants and Rolls-Royce moved for summary judgment on, *inter alia*, Rolls-Royce's misappropriation claim. The court granted defendants' motion in this respect, holding that a reasonable jury could only find that the documents at issue are not trade secrets. Slip op. at 46.

Rolls-Royce manufactures turbine engines, and it licenses Authorized Maintenance Centers ("AMCs") to perform repair services on the engines. Rolls-Royce provides AMCs certain proprietary information and instructions in the form of Overhaul Information Letters ("OILs"). These are also referred to as Distributor Overhaul Information Letters ("DOILs") and Approved Maintenance Center Overhaul Information Letters ("AMC-OILs"). The DOILs, which are in the public domain, were used as templates for the AMC-OILs. *See id*. at 41. Rolls-Royce alleged that five AMC-OILs are trade secrets, but the court held that a reasonable jury could not find that Rolls-Royce transformed information in the public domain (DOILs) into trade secrets (AMC-OILs) by compiling public information in a unique and value-producing manner. *See id*. at 43. In its present motion to alter or amend, Rolls-Royce posits that the court should deny this part of defendants' motion for summary judgment because there is a genuine issue of material fact whether the AMC-OILs are trade secrets. Specifically, Rolls-Royce argues that (1) the court mischaracterized Rolls-Royce's position as not

asserting that new information is itself a trade secret; (2) the court impermissibly resolved a genuine issue of material fact regarding the significance of new, nonpublic information in the AMC-OILs; and (3) the court relied on inapposite authority.

II

"Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Arrieta v. Yellow Transp., Inc.*, 2009 WL 129731, at *1 (N.D. Tex. Jan. 20, 2009) (Fitzwater, C.J.) (internal quotation marks and citation omitted). "Such motions are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Id.* (internal quotation marks and citation omitted). Rolls-Royce argues that the court has made a manifest error of law or fact.

III

A

The court first considers whether it erred in considering the AMC-OILs as whole documents and not focusing on the new information contained in the AMC-OILs. In *Rolls-Royce* the court pointed out that "Rolls-Royce does not assert that only the new information is a trade secret; instead, it maintains that the addition of new information transforms the entire document into a proprietary document." *Rolls-Royce*, No. 3:07-CV-0739-D, slip op. at 42.

Moreover, before Rolls-Royce filed the present motion to alter or amend, it did not assert a trade secret claim as to the new information in and of itself.  In its own summary judgment motion and in response to defendants' summary judgment motion, Rolls-Royce argued for trade secret protection only as to the AMC-OILs as entire documents, contending as follows: "AMC-OILs are trade secrets," P. Mot. Sum. J. 7; "Each of the AMC-OILs is a unique compilation of information," *id.*; "the AMC-OILs have independent economic value," *id.* at 8; "The AMC-OILs are not generally known," *id.*; "the AMC-OILs are not readily ascertainable through proper means," *id.* at 10; "all of the trade secret documents . . . were subject to contractual restrictions," P. Reply Br. 8; and "AMC-OILs are not generally known for purposes of trade secret protection in their own right," P. Resp. to Ds. Mot. Sum. J. 11; *see also* D. Br. 10.  Rolls-Royce also referred to the five AMC-OILs at issue as the "Trade Secret AMC-OILs."  P. Resp. to Ds. Mot. Sum. J. 1.  In its reply brief in support of its motion to alter or amend, Rolls-Royce acknowledges that it did not argue in the summary judgment briefing that the new information in and of itself was a trade secret.  Instead, it insists that its litigation position that the AMC-OILs are trade secrets, comprised of public and nonpublic information, logically includes the claim that the new information is a trade secret in and of itself.  *See* P. Reply Br. 11.

- 4 -

> Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.

*Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)).[2] Rolls-Royce did not argue that the new information in and of itself was a trade secret until its motion to alter or amend. Even assuming *arguendo* that the "trade secret within a trade secret" claim logically flows from Rolls-Royce's broader claims, Rolls-Royce never made this argument—in opposition to defendants' motion or in support of its own motion—when describing the claims it was asserting in this case. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002) ("[Plaintiff] has been both too vague and too inclusive, effectively asserting that all information in or about its software is a trade secret."); *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1304-05 (N.D. Ill. 1996) (holding that where plaintiffs

---

[2]The court recognizes that *Simon* is referring, in pertinent part, to a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment, and that Rolls-Royce is moving to alter or amend an interlocutory memorandum opinion and order. While the factors that inform a court's reconsideration of a final judgment (e.g., finality of judgment) are not necessarily present when reconsidering an interlocutory decision, the familiar principles recited in *Simon* guide the court's decision in this interlocutory context as well.

titled their misappropriation claim and referred only to a singular "trade secret," defendants should have been on notice that plaintiffs sought trade secret protection for an interrelationship of parts, not for each individual component). The court declines to consider such a claim for the first time in a motion to alter or amend. The court had no opportunity to evaluate, and defendants had no opportunity to respond to, whether the new information was in and of itself a trade secret. Furthermore, the court was not obliged when deciding the summary judgment motions to examine page-by-page documents that were alleged to be trade secrets in their entirety for the purpose of determining on its own initiative whether there were parts that qualified for trade secret protection. It was instead Rolls-Royce's burden to point out specifically what it alleged to be a protected trade secret. The court therefore declines to consider Rolls-Royce's new claim in the context of a motion to alter or amend.

B

Rolls-Royce also argues that, at the summary judgment stage, the court improperly resolved conflicting evidence in favor of defendants. Specifically, Rolls-Royce maintains that the court treated defendants' evidence more favorably than Rolls-Royce's evidence and discounted Rolls-Royce's expert testimony in light of defendants' expert testimony.

Because the AMC-OILs are based on the DOILs, which are in the

public domain, the court focused on whether the AMC-OILs are unique and valuable compilations that deserve trade secret protection. *See Rolls-Royce*, No. 3:07-CV-0739-D, slip op. at 42-43 ("[For a] compilation to be a trade secret, the information must be combined in a unique way by which the value of the information is increased." (citing *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003))). To defeat defendants' summary judgment motion, Rolls-Royce pointed to the declaration of Thomas P. Leonard ("Leonard") and to the AMC-OILs. As to whether the AMC-OILs are unique and valuable compilations, Leonard only opined that "[e]ach of the AMC-OILs is a unique compilation of information created and validated by Rolls-Royce[.]" P. App. 55. Leonard also listed the differences between the DOILs and the AMC-OILs, *see id.* at 56-57, but he did not specify how these changes transformed information in the public domain into trade secrets.[3] "While all of the evidence must be viewed in a light most favorable to the

---

[3]Contrary to Rolls-Royce's assertions, the court did not resolve conflicting expert testimony or make a factual determination in granting summary judgment. Once defendants pointed to the absence of evidence that the AMC-OILs are trade secrets, it was Rolls-Royce's obligation to adduce competent evidence that created a genuine issue of material fact. Rolls-Royce did not meet this burden. Although defendants' expert, Jerry Reno ("Reno"), opined that the DOILs and the AMC-OILs are technically the same and have no major engineering differences, Ds. Mot. to Exclude Reno App. 20, 30, 32, and 34, it was unnecessary for the court to compare Reno's testimony against Rolls-Royce's expert testimony because Rolls-Royce bore the burden of establishing that the AMC-OILs are trade secrets, and it did not meet this burden.

motion's opponent, neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden." *Neely v. Khurana*, 2009 WL 1605649, at *7 (N.D. Tex. Mar. 20) (Ramirez, J.) (internal quotation marks and citations omitted), *rec. adopted*, 2009 WL 1605649, at *1 (N.D. Tex. June 5, 2009) (Fitzwater, C.J.). Leonard's declaration is conclusory in this material respect. Rolls-Royce did not present evidence that created a genuine issue of material fact as to whether the AMC-OILs are trade secrets. The court therefore did not err by improperly resolving conflicting evidence at the summary judgment stage.

C

Finally, Rolls-Royce argues that cases cited in *Rolls-Royce* that hold that public information can be a trade secret if it is compiled in a unique and valuable way are inapposite. *See Rolls-Royce*, No. 3:07-CV-0739-D, slip op. at 42-43 (citing *Minn. Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001); *Penalty Kick Mgmt. Ltd.*, 318 F.3d at 1291; *State ex rel. The Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 675 (Ohio 1997)). Rolls-Royce contends that the standard applied in those cases is not the one apposite here because the AMC-OILs are comprised of public and nonpublic information. Rolls-Royce argues that because the AMC-OILs contain some nonpublic information, even a slight change can result in trade secret protection.

Rolls-Royce misconstrues these cases. For example, in *Penalty*

*Kick* the court considered a labeling technique that was partly in the public domain (in a patent application). *Penalty Kick*, 318 F.3d at 1291. The court held that certain aspects of the process were not commonly known to the public, and the public elements were combined in a valuable integration. *Id.* On that basis, the court affirmed the district court's holding that the technique was a trade secret. *Id.* at 1292. *Penalty Kick* does address situations in which the trade secret matter is comprised of both public and nonpublic information. Likewise, in *Pribyl* the court noted that "*even if* comprised solely of materials available in the public domain," the manuals at issue could be trade secrets if they were combined into a unique system. *Pribyl*, 259 F.3d at 595-96 (emphasis added). The *Pribyl* court did not sort out what information in the manuals was public and what information was not public, but it noted that the manuals included "a host of materials which would fall within the public domain." *Id.* at 596. This court understands this statement from *Pribyl* to mean that documents comprised of public and nonpublic information can be trade secrets when they are compiled in a unique and valuable way. Moreover, Rolls-Royce points to no alternative test to determine whether a document comprised of public and nonpublic information is a trade secret. The court therefore did not err in relying on these cases.

* * *

The court concludes that Rolls-Royce is not entitled to the relief requested, and it therefore denies the August 16, 2010 motion to alter or amend the court's memorandum opinion and order.

**SO ORDERED.**

November 8, 2010.

                                                  _____
                                                  SIDNEY A. FITZWATER
                                                  CHIEF JUDGE